UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                        :
VW CREDIT, INC.,                                        :
                                                        :
                              Plaintiff,                :
                                                        :              22-CV-2310 (VSB)
                - against -                              :
                                                        :
THE CITY OF NEW YORK, *et al.*,                         :
                                                        :
                              Defendants.               :
                                                        :
--------------------------------------------------------X
                                                        :
VW CREDIT LEASING, LTD.,                                :
                                                        :
                              Plaintiff,                :              23-CV-856 (VSB)
                                                        :
                - against -                             :
                                                        :              **ORDER**
THE CITY OF NEW YORK, *et al.*,                         :
                                                        :
                              Defendants.               :
                                                        :
--------------------------------------------------------X

<u>VERNON S. BRODERICK, United States District Judge</u>:

        Pending before me in these related cases are the parties' cross motions for summary

judgment.  In case No. 22-CV-2310, Plaintiff VW Credit, Inc. ("VW Credit"), Defendant the City

of New York (the "City"), and Defendant Five J's Automotive Ltd. ("Five J's") cross-move for

summary judgment on:  (1) Plaintiff's claims that Defendants' boot-and-tow policies (a/k/a the

"Scofflaw program") violate the Fourth Amendment's protection against warrantless seizures, the

Fifth Amendment's protection against uncompensated takings, and the Fourteenth Amendment's

Due Process Clause (collectively, the "constitutional claims"); (2) Plaintiff's claim against Five

J's for conversion; and (3) Five J's' crossclaim against the City for indemnification.  (*See* No. 22-

CV-2310 Docs. 43, 50, 55.)  In case No. 23-CV-856, Plaintiff VW Credit Leasing, Ltd. ("VW

Credit Leasing"), Defendant the City, and Defendant Breen Brothers Towing Inc. ("Breen

Bros.") cross-move for summary judgment on (1) Plaintiff's claims that Defendants' boot-and-

tow policies violate the Fourth, Fifth, and Fourteenth Amendments; (2) Plaintiff's claim against

Breen Bros. for conversion.  (*See* No. 23-CV-856 Docs. 33, 38, 34.)  Breen Bros. did not assert a

claim for indemnification against the City.  (*See id*.)  I will refer to Nos. 22-CV-2310 and 23-CV-

856 as the "VW Cases."

On March 11, 2025, I issued an Opinion & Order resolving similar summary-judgment

motions in a related case, No. 21-CV-3908 ("*Mercedes*").  (*See* No. 21-CV-3908 Doc. 98

("O&O").)[1]  *Mercedes*, like the VW Cases, involved an auto leasing company's Fourth, Fifth,

and Fourteenth Amendment challenges to the City's boot-and-tow program, a claim for

conversion against Five J's, and a crossclaim by Five J's against the City for indemnification.

(O&O 2–3.)  The plaintiff lessor asserted its constitutional claims against the City and Five J's.

(*Id*.)  I concluded:

> [T]he Scofflaw program violates Plaintiff's due process rights under the Fourteenth
> Amendment, but not its Fifth Amendment rights against uncompensated takings or
> its Fourth Amendment rights against unwarranted seizures.  As state actors, the City
> and Five J's are each liable for the due process violation.  Therefore, the motions
> are GRANTED IN PART AND DENIED IN PART.  Specifically:  (1) Plaintiff's
> motion for summary judgment is GRANTED as to the due process claim against
> the City and Five J's and otherwise DENIED; (2) the City's motion for summary
> judgment is GRANTED as to Plaintiff's Fourth and Fifth Amendment claims
> and as to Five J's' indemnification claim and otherwise DENIED; and (3) Five J's
> motion for summary judgment is GRANTED as to Plaintiff's Fourth and Fifth
> Amendment claims and is otherwise DENIED.

(O&O 2.)  Consistent with precedent, I did not resolve the issue of remedies for the due process

violation.  (*Id*. 22, 32.)  The plaintiff's attorneys in *Mercedes* (Nicholas Duston and Benjamin

---

[1] *See also Mercedes-Benz Fin. Servs. USA, LLC v. City of New York*, ___ F. Supp. 3d. ___, No. 21-CV-3908, 2025
WL 774912 (S.D.N.Y. Mar. 11, 2025).

Schwartz) represent Plaintiffs in the VW Cases.  Five J's' attorney in *Mercedes* (Joseph Paykin) represents Five J's in No. 22-CV-2310.  The City's Corporation Counsel represents the City in *Mercedes* and the VW Cases, and the same attorney for that office, Genan Zilkha, has appeared in each case.

On May 15, 2025, I held a hearing during which the parties agreed that the legal issues and factual circumstances presented in the VW Cases are not materially different from those presented in the *Mercedes* Opinion & Order, and that the outcome as to liability in the VW Cases should be identical.  Counsel for Plaintiffs VW Credit and VW Credit Leasing; the City; and Five J's appeared at the hearing.  Although Breen Bros. did not appear at the hearing, it joined the City's pre-hearing letter stating that it "finds no basis to argue that a different outcome should result in [the VW Cases]" from the *Mercedes* decision.  (No. 23-CV-856 Doc. 57 at 1.)

Accordingly—and consistent with the reasoning of my March 11, 2025 Opinion & Order in *Mercedes*, which is attached to this Order as Exhibit A—it is hereby:

ORDERED that in No. 22-CV-2310, summary judgment is GRANTED to Plaintiff as to liability on the Fourteenth Amendment claim and is otherwise DENIED; summary judgment is GRANTED to the City on the Fourth and Fifth Amendment claims and Five J's indemnification claim and is otherwise DENIED; and summary judgment is GRANTED to Five J's on the Fourth and Fifth Amendment claims and is otherwise DENIED.

IT IS FURTHER ORDERED that in No. 23-CV-856, summary judgment is GRANTED to Plaintiff as to liability on the Fourteenth Amendment claim and is otherwise DENIED; summary judgment is GRANTED to the City on the Fourth and Fifth Amendment claims and is otherwise DENIED; and summary judgment is GRANTED to Breen Bros. on the Fourth and Fifth Amendment claims and is otherwise DENIED.

The Clerk of Court is respectfully directed to docket this Order in Nos. 22-CV-2310 and

23-CV-856; to terminate the pending motions at Docs. 43, 50, and 55 in No. 22-CV-2310; and to

terminate the pending motions at Docs. 33, 38, and 44 in No. 23-CV-856.

SO ORDERED.

Dated: May 22, 2025
      New York, New York

Vernon S. Broderick
United States District Judge

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                 :

MERCEDES-BENZ FINANCIAL       :
SERVICES USA, LLC,               :
                                 :

                   Plaintiff,     :               21-CV-3908 (VSB)
                                 :

          - against -        :        **<u>OPINION & ORDER</u>**
                               :

CITY OF NEW YORK, *et al.*,    :
                                 :

                Defendants.   :

------------------------------------------------------------X
                                 :

FIVE J'S AUTOMOTIVE LTD.,    :
                                 :

               Crossclaimant,  :
                                 :

          - against -        :
                                 :

CITY OF NEW YORK,         :
                                 :

              Crossclaim   :
              Defendant.   :
                                 :

------------------------------------------------------------X

<u>Appearances</u>:

Nicholas Andrew Duston
Benjamin D. Schwartz
Norris McLaughlin, P.A.
New York, NY
*Counsel for Plaintiff*

Edward Louis Murray III
Samantha Michelle Schonfeld
New York City Law Department
New York, NY

Annette Marie Lalic
United States Equal Employment Opportunity Commission
New York, NY

*Counsel for Defendant and Crossclaimant City of New York*

Diana M. Malave
Joseph Noah Paykin
Paykin Krieg & Adams, LLP
*Counsel for Defendant and Crossclaimant Five J's Automotive*

Joseph Noah Paykin
Paykin Krieg & Adams, LLP
*Counsel for Defendant Kevin Kiernan*

<u>VERNON S. BRODERICK, United States District Judge</u>:

Defendant the City of New York (the "City") operates a "Scofflaw" or "Boot-and-Tow"

program to enforce unpaid parking and traffic-camera tickets.  Under the program, the City

works with towing companies, including Defendant Five J's Automotive Ltd. ("Five J's"), to

seize the vehicles of drivers with over $350 in unpaid tickets.  Vehicle owners must pay the

unpaid tickets and various towing and storage fees to reclaim their cars.  Lienholders on the

vehicles may also reclaim them by paying these fees.  The City auctions off unclaimed

vehicles—subject to any lien—after approximately one month.  After deducting the amount of

unpaid tickets and fees, the City remits the remaining sale proceeds to the owner of the vehicles.

Plaintiff Mercedes-Benz Financial Services USA, LLC ("Mercedes") held a perfected

security interest in a vehicle (the "Vehicle") pursuant to an installment contract with non-party

Melende Chery ("Chery").  Chery accrued over $350 in unpaid tickets, so Five J's towed her

Vehicle to an impound lot pursuant to the City's Scofflaw program.  Mercedes was notified of

the seizure and attempted to reclaim the Vehicle.  Mercedes did not pay the City's fees, so the

City auctioned off the Vehicle, remitting the proceeds net the fees to Chery.  Mercedes has since

been unable to repossess the Vehicle.

Mercedes then brought this action against the City and Five J's, asserting various federal

and state constitutional claims against Defendants related to the operation of the City's Scofflaw

program and a conversion claim against Five J's.  Five J's asserted a counterclaim against the

City for indemnification of any liability.  Before me are Mercedes' motion for partial summary

judgment against both Defendants, the City's motion for partial summary judgment against

Mercedes and against Five J's on its indemnification claim, and Five J's motion for summary

judgment against Mercedes.

For the reasons that follow, I conclude that the Scofflaw program violates Plaintiff's due

process rights under the Fourteenth Amendment, but not its Fifth Amendment rights against

uncompensated takings or its Fourth Amendment rights against unwarranted seizures.  As state

actors, the City and Five J's are each liable for the due process violation.  Therefore, the motions

are GRANTED IN PART AND DENIED IN PART.  Specifically:  (1) Plaintiff's motion for

summary judgment is GRANTED as to the due process claim against the City and Five J's and

otherwise DENIED; (2) the City's motion for summary judgment is GRANTED as to Plaintiff's

Fourth and Fifth Amendment claims and as to Five J's' indemnification claim and otherwise

DENIED; and (3) Five J's motion for summary judgment is GRANTED as to Plaintiff's Fourth

and Fifth Amendment claims and is otherwise DENIED.

## I.    **Factual Background**[1]

### A.  *The City's "Scofflaw" or "Boot-and-Tow" Program*

The City operates a program to enforce unpaid parking tickets that is colloquially known

as the Scofflaw or Boot-and-Tow program ("Boot and Tow program" or "Scofflaw program").

(MB 1st Mem. 3–4; City 1st Mem. 4–5; *see also* MB 56.1 Stm. ¶¶ 22–31; City 56.1 Stm. ¶¶ 16–

35.)[2]  Pursuant to New York State and City law, unpaid parking tickets, red light camera tickets,

---

[1] The underlying facts are undisputed unless otherwise noted.

[2] "MB 1st Mem" refers to Plaintiff Mercedes's memorandum of law in support of its motion for summary judgment. (Doc. 66.)  "City 1st Mem" refers to Defendant the City's memorandum of law in support of its motion for summary

speeding camera tickets, and bus lane tickets eventually become money judgments asserted by the City against the registered owner of the offending vehicle.  (*See* Alverio Decl. ¶¶ 4–9; City 56.1 Stm. ¶ 5.)[3]  *See also* N.Y.C. R. & Regs. tit. 19, § 39-10(d); N.Y. Veh. & Traf. L. § 237(5).  Once a registered owner accrues more than $350 of these judgments, the City seizes the registered vehicle and, after a period of time, sells it at public auction to satisfy the debt.  (Alverio Decl. ¶ 9.)  *See also* N.Y.C. Admin. Code. § 19-212.

To begin the seizure process, the City issues a document authorizing the seizure of the subject vehicle to execute the money judgment.  (City 56.1 Stm. ¶¶ 19–23.)  When the authorization issues, the City immobilizes the subject vehicle by placing a "boot" on it.  (*Id*. ¶ 38.)  Then, a contracted towing operator takes the vehicle to a "tow pound."  (*Id*. ¶¶ 21, 39.)  Upon the seizure, the City notifies certain interested parties, including, among others, the registered owner of the vehicle and any lienholder.  (*Id*.)  The notice to the registered owner states that the City will sell the vehicle at public auction unless the owner redeems the vehicle by paying the judgment debt and the fees associated with seizing, towing, and storing the vehicle.  (Alverio Decl. ¶ 13.)  The notice to the lienholder states that the City will auction the vehicle unless the lienholder waives any legal claims against the City associated with the release of the vehicle and pays the seizure, towing, and storage fees.  (City 56.1 Stm. ¶¶ 23–25.)  The lienholder does not have to pay the underlying judgment debt to retrieve the vehicle, and may obtain a "Sales Hold" to stop the public auction pending its submission of the required documents and payment of the fees.  (*Id*. ¶ 31.)  Vehicles sold at a public auction are "subject to

---

judgment and in opposition to Plaintiff's motion.  (Doc. 76.)  "MB 56.1 Stm." refers to Plaintiff's Local Rule 56.1 Statement.  (Doc. 69.)  "City 56.1 Stm." refers to the City's Local Rule 56.1 Statement.  (Doc. 74.)

[3] "Alverio Decl." refers to the Declaration of Daisy Alverio.  (Doc. 67-7; Doc. 73-4.)

any or all recorded liens," and therefore "may be subject to repossession by the lien holder." (*Id.* ¶ 35 (quoting *Vehicle Auctions*, N.Y.C. Dep't of Fin., https://perma.cc/HJ5B-C5XE).)

### B.  *The Subject Vehicle*

Plaintiff held a lien and perfected security interest in a 2015 Mercedes-Benz (the "Vehicle") pursuant to non-party Melande Chery's ("Chery") purchase of the Vehicle under an installment contract.  (MB 56.1 Stm. ¶¶ 4–5, 7.)  The City contracts with non-party PayLock to provide towing and vehicle-storage services in connection with the City's Scofflaw program.  (5J 56.1 Stm. ¶ 5.)[4]  PayLock subcontracted responsibility for towing and impound to Defendant Five J's, a towing company.  (*Id.* ¶¶ 4–5.)

Chery accrued over $350 in debt for City parking tickets, so on October 10, 2019, the City seized the Vehicle in accordance with its Scofflaw program by placing a boot on it.  (MB 56.1 Stm. ¶ 13.)  The same day, Defendant Five J's towed the Vehicle to a storage lot.  (*Id.* ¶ 14; City 56.1 Stm. ¶ 39; 5J 56.1 Stm. ¶ 12.)

According to the terms of Chery's installment contract with Plaintiff, because Chery defaulted upon the City's seizure of the Vehicle Plaintiff was entitled to repossess the Vehicle.  (MB 56.1 Stm. ¶¶ 10–11.)  According to the City, however, Plaintiff "was entitled to possession of the Vehicle only after payment of appropriate booting, towing and storage fees to Five J's."  (City Response to MB 56.1 Stm. ¶ 11.)[5]

Plaintiff received a letter notice of the seizure from the City on October 18, 2019, and from PayLock on or about October 21, 2021.  (MB 56.1 Stm. ¶¶ 16–17.)  On or about October 31, 2019, at Plaintiff's request, the City issued a Sales Hold to remove the Vehicle from an

---

[4] "5J 56.1 Stm." refers to Defendant Five J's Local Rule 56.1 Statement.  (Doc. 82.)

[5] "City Response to MB 56.1 Stm." refers to the City's Responses to MB's Local Rule 56.1 Statement.  (Doc. 75.)

auction scheduled for November 6, 2019. (*Id.* ¶ 18.) On November 6, 2019, after Plaintiff

submitted paperwork showing it held a lien on the Vehicle, the City issued Plaintiff a "Notice of

Release." (City 56.1 Stm. ¶ 45.) A City agency employee directed Plaintiff to the location at

which Plaintiff could pay the seizure, towing, and storage fees necessary to obtain the release of

the Vehicle. (*Id.* ¶ 46; MB 56.1 Stm. ¶ 20.) Plaintiff did not pay the required fees by the

November 28, 2019 deadline. (City. 56.1 Stm. ¶ 47.) Thus, on December 13, 2019, the City sold

the Vehicle at public auction for $14,000, subject to Plaintiff's lien. (*Id.* ¶ 48.) At the time the

Vehicle was seized, Chery owed $8,528.40 on the installment contract. (MB 56.1 Stm. ¶ 35.)

The City delivered the proceeds from the auction to Chery, less the outstanding judgment amount

and fees for the seizure and auction. (City. 56.1 Stm. ¶ 51.)

## II.    <u>Procedural History</u>

Plaintiff initiated this action on May 3, 2021 by filing its complaint, naming the City,

Five J's, and Kevin Kiernan—Five J's proprietor—as Defendants. (Doc. 1 ("Compl.") ¶¶ 16–

18.) The complaint asserted: (1) claims under 42 U.S.C. § 1983 that Defendants' seizure and

auction of the Vehicle violated the Fourth, Fifth, and Fourteenth Amendments of the United

States Constitution, (*id.* ¶¶ 98–110); (2) claims that Defendants' actions violated analogous

provisions of the New York Constitution, (*id.* ¶¶ 111–12); (3) a claim for a declaratory judgment

that Defendants' actions violated the United States Constitution, (*id.* ¶¶ 113–19); (4) a claim for

common-law conversion against Defendants Five J's and Kiernan, (*id.* ¶¶ 120–24). In addition

to declaratory relief, Plaintiff seeks compensatory damages, punitive damages, injunctive relief

against the Scofflaw program, attorneys' fees, and costs. (Compl. ¶¶ 21–22.)

The City answered the complaint on October 4, 2024. (Doc. 29.) On October 28, 2024,

Plaintiff dismissed its claim against Kiernan. (Doc. 30.) The same day, Five J's answered,

asserting a crossclaim against the City for common-law indemnification.  (Doc. 34 ¶¶ 126–34.)

The City answered Five J's crossclaim on March 30, 2022.  (Doc. 45.)

The parties engaged in discovery from November 19, 2021 to October 31, 2022.  (*See*

Docs. 37, 51.)  Following a delay in the completion of discovery to coordinate scheduling with a

related case, (*see* Docs. 53, 58), I approved the parties' summary judgment briefing schedule on

April 10, 2023, (Doc. 61).

Mercedes moved for summary judgment on its § 1983 claims against the City and Five

J's on May 19, 2023, (Doc. 65), submitting a memorandum of law, (Doc. 66 ("MB 1st Mem.")),

two declarations with exhibits, (Doc. 67 ("Duston Decl."); Doc. 68 ("Azubogu Decl.")), and a

Local Rule 56.1 Statement, (Doc. 69 ("MB 56.1 Stm.")).  On June 21, 2023, the City cross-

moved for summary judgment on Mercedes's § 1983 claims and on Five J's crossclaim for

indemnification, (Doc. 72), submitting a memorandum of law (which also opposed Mercedes'

motion), (Doc. 76 ("City 1st Mem.")), a declaration with exhibits, (Doc. 73 ("Schonfeld Decl.")),

a Local Rule 56.1 Statement, (Doc. 74 ("City 56.1 Stm.")), and its response to Mercedes's 56.1

Statement, (Doc. 75 ("City Resp. to MB 56.1").  The same day, Five J's cross-moved for

summary judgment against Mercedes on all of its claims against Five J's, (Doc. 77), submitting a

supporting memorandum of law (which also opposed Mercedes's motion), (Doc. 78 ("5J 1st

Mem.")), two declarations with exhibits, (Doc. 79 ("Paykin Decl."); Doc. 80 ("O'Grady Decl.")),

a Local Rule 56.1 Statement, (Doc. 82 ("5J 56.1 Stm.")), and a response to Mercedes's 56.1

Statement, (Doc. 81 ("5J Response to MB 56.1 Stm.")).  On July 14, 2023, Five J's submitted a

memorandum of law in opposition to the City's motion on the crossclaim.  (Doc. 84 ("5J 2d

Mem.").)  On August 11, 2023, Mercedes submitted a response to Five J's 56.1 Statement, (Doc.

87 ("MB Response to 5J 56.1 Stm.")), a response to the City's 56.1 Statement, (Doc. 88 ("MB

Response to City 56.1 Stm.")), a counterstatement of material facts regarding Five J's cross-motion for summary judgment, (Doc. 89 ("MB Counterstm.")), a memorandum of law in support of its motion against the City and in opposition to the City's cross-motion, (Doc. 89 ("MB 2d Mem.")), and a memorandum of law in support of its motion against Five J's and in opposition to Five J's' cross-motion, (Doc. 91 ("MB 3d Mem.").  On September 22, 2023, Five J's filed a memorandum of law in support of its cross-motion for summary judgment.  (Doc. 94 ("5J 3d Mem.").)  The same day, the City filed a memorandum of law in support of its cross-motion for summary judgment.  (Doc. 95 ("City 2d Mem.").)  Also before me are Plaintiff and the City's supplemental submissions dated May 24 and May 30, 2024, respectively.  (Docs. 96, 97.)  I consider these supplemental submissions in deciding the motions.

### III.   **Legal Standard**

To prevail on a motion for summary judgment, a movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016) (citation omitted).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record, including depositions . . . or declarations," or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

I must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment."  *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986);

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Viewing the evidence in the light most favorable to the non-moving party means that I may not "weigh the evidence" and must "eschew credibility assessments."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted). "Once the moving party has carried its burden" of citing portions of the record evincing no genuine dispute as to any material fact, "the nonmoving party 'must come forward with specific facts showing there is a genuine issue for trial,' bearing in mind that 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient.'"  *Barr v. City of New York*, No. 16-CV-5266, 2018 WL 3407705, at *3 (S.D.N.Y. July 2, 2018) (quoting *Matsushita*, 475 U.S. at 587; *Anderson*, 477 U.S. at 252).  Here, because each party has moved for summary judgment, I examine "each party's motion . . . on its own merits," drawing all reasonable inferences "against the party whose motion is under consideration."  *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (internal quotation marks omitted); *see also Tang Cap. Partners, LP v. BRC Inc.*, ___ F. Supp. 3d. ___, No. 22-CV-3476, 2024 WL 4716315, at *22 (S.D.N.Y. Nov. 8, 2024).

## IV.  <u>Discussion</u>

I first address Plaintiff's § 1983 claims against Defendants and its conversion claim against Five J's, then address the appropriate remedies.[6]  I conclude that:  (1) Defendant Five J's is a proper § 1983 defendant because it is a state actor in this context; (2) Defendants violated Plaintiff's Fourteenth Amendment due process rights by refusing to hold a hearing before auctioning the Vehicle; (3) Defendants did not violate Plaintiff's Fifth Amendment rights because

---

[6] Although the parties purport to seek summary judgment on Plaintiff's claim that Defendants violated the New York Constitution, (*see* Docs. 65, 72, 77), none of the briefing addresses this claim.  Thus, no party has demonstrated an entitlement to summary judgment on this claim.

they did not commit a taking; (4) Defendants did not violate Plaintiff's Fourth Amendment rights because the seizure and impoundment of the Vehicle were reasonable; and (5) Five J's is not entitled to summary judgment on Plaintiff's conversion claim.  With regard to remedies, Plaintiff is entitled to nominal damages and a declaratory judgment on the Fourteenth Amendment claim. I will order additional briefing concerning compensatory damages.  Finally, Five J's' crossclaim for indemnification is premature, so I will dismiss it without prejudice.

### A.  *Liability*

#### 1.  State Action Under § 1983

Mercedes asserts its various constitutional claims under 42 U.S.C. § 1983, which "establishes a private right of action for money damages against" certain state officials or entities that "violate a constitutional or statutory right."  *Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018).[7]  "In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law."  *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (citing *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)).

There is no dispute that the City is a state actor.  *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978) (concluding that § 1983 applies to municipalities).[8]  (*See also*

---

[7] Five J's is mistaken that "the only possible source" of "a cause of action for a due process violation" is "*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)."  (5J 1st Mem. 14.)  *See Ziglar v. Abbasi*, 582 U.S. 120, 130–31 (2017) (explaining that Congress enacted § 1983 as a private cause of action for constitutional violations against state officials, whereas *Bivens* represents an "implied cause of action" against federal officials who "violated the prohibition against unreasonable search and seizures").

I also note that Five J's' asserts it is entitled to the affirmative defense of qualified immunity.  (5J 1st Mem. 17.) This is incorrect.  "Qualified immunity is a defense available only to individuals sued in their individual capacity." *Askins v. Doe No. 1*, 727 F.3d 248, 254 (2d Cir. 2013).

[8] *Monell* provides that a municipality is liable under § 1983 when its "policy or custom" is "the moving force of the constitutional violation." 436 U.S. at 694.  The City briefly argues that it should not face *Monell* liability because "there is no underlying constitutional violation."  (City 1st Mem. 28.)  "[T]he City does not dispute," however, "that it followed its normal policy and procedure for seizing vehicles to satisfy outstanding parking violation judgments."

*generally* City 1st Mem. (omitting any mention of the state actor doctrine); City 2d Mem.

(same).)  However, Five J's argues that its "challenged conduct" did not "constitute[] state

action," *Ciambriello*, 292 F.3d at 323 (internal quotation marks omitted), and therefore it is

entitled to summary judgment against Mercedes' § 1983 claims.  I disagree.  Five J's undertook

its allegedly unconstitutional conduct—towing then impounding the Vehicle—in concert with the

City and under its authority, and therefore was "acting under color of state law."  *Id*.

"Actions of a private entity" like Five J's "are attributable to the State if there is a

sufficiently close nexus between the State and the challenged action of the entity so that the

action of the latter may be fairly treated as that of the State itself."  *Barrows v. Becerra*, 24 F.4th

116, 135 (2d Cir. 2022) (internal quotation marks omitted).  A "sufficiently close nexus" exists

when:  (1) "the entity acts pursuant to the coercive power of the state or is controlled by the

state"; (2) "the state provides significant encouragement to the entity, the entity is a willful

participant in joint activity with the state, or the entity's functions are entwined with state

policies"; or (3) "the entity has been delegated a public function by the state."  *Id*. (quoting

*Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

Here, Five J's admits that—pursuant to its subcontract with PayLock and PayLock's

prime contract with the City—it is performing "towing and impoundment" services "for CNY,"

the City.  (5J 56.1 Stm. ¶ 5; *see also* 5J Response to MB 56.1 Stm. ¶ 15 (admitting that "Five J's

received the request to tow from PayLock on behalf of [the City]").)  These services are precisely

what Mercedes asserts is unconstitutional, and are "entwined with state policies," *Barrows*, 24

F.4th at 135 (internal quotation marks omitted), because they are undertaken pursuant to the

---

(City Response to MB 56.1 Stm. ¶ 22.)  It is therefore liable under *Monell* for any constitutional violations from this "policy."  436 U.S. at 694.

City's Scofflaw program.  (5J Response to MB 56.1 Stm. ¶ 22 (admitting that the City and Five

J's' "conduct in relation to the vehicle complied with their standard policies, practices, and

customs for the seizure, detention, and disposition of vehicles seized for outstanding parking

violations . . .").)  Further, the City "provides significant encouragement" to Five J's' for its

participation in the Scofflaw program, *Barrows*, 24 F.4th at 135 (internal quotation marks

omitted), because the City pays Five J's towing, booting, and impoundment fees from the

proceeds of auctioned Scofflaw vehicles, (5J 56.1 Stm. ¶ 22 (citing Duston Decl. 145)).

Although this "funding" is insufficient on its own to transform the conduct of Five J's into state

action, the Scofflaw program empowered Five J's to take control of the Vehicle on the City's

behalf; this combination is thus "responsible for the specific conduct of which the plaintiff

complains."  *Fabrikant*, 691 F.3d at 207 (quoting *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d

105, 111 (2d Cir. 2003)).  Indeed, Judge Kenneth M. Karas recently concluded that a towing

company's similar arrangement with the City of Yonkers to tow and impound certain vehicles

was a joint action with the state.  *See Santander Consumer USA, Inc. v. City of Yonkers*, No. 22-

CV-8870, 2024 WL 4817649, at *5 (S.D.N.Y. Nov. 18, 2024) (citing, *inter alia*, *Ali ex rel.*

*Cofield v. Liggett*, No. 22-CV-944, 2022 WL 17478264, at *5 n.1 (N.D.N.Y. Sept. 20, 2022);

*Walters v. T&D Towing Corp.*, No. 17-CV-681, 2018 WL 1525696, at *5 n.5 (E.D.N.Y. Mar. 28,

2018); *Stypmann v. City & County of San Francisco*, 557 F.2d 1338, 1341–42 (9th Cir. 1977));

*see also Tarantino v. Syputo*, No. 03-03450, 2006 WL 1530030, at *7 (N.D. Cal. June 2, 2006)

("Towing companies are deemed to be state actors because they tow vehicles in response to

orders by law enforcement officials.").

     Five J's cites *Calderon v. Burton* for the proposition that "companies that provide services

to municipalities pursuant to contracts are not thereby transformed into state actors—at least

where, as here, the function performed (towing cars) has not been historically, traditionally and exclusively the prerogative of the state." 457 F. Supp. 2d 480, 488 (S.D.N.Y. 2006) (citing, *inter alia*, *Rendell-Baker v. Kohn*, 457 U.S. 830, 840–41 (1982)). Five J's citation to *Calderon* is misplaced. The plaintiff in *Calderon* challenged "the manner of the [defendant's] towing" of her vehicle "with the emergency brake engaged"; there was no allegation "that the [municipality] in any way regulated, or even had a say in, the manner in which [the company] chose to tow cars." 457 F. Supp. 2d at 488. The allegations in *Calderon* did not involve a defendant towing company's towing-services agreement with the city. *See Calderon*, 457 F. Supp. 2d at 488 ("no such contract is pleaded"). Here, however, the challenged "decisions," *Rendell-Baker*, 457 U.S. at 840, are the fact that Five J's booted, towed, and stored the Vehicle without releasing it to Plaintiff. As discussed, Five J's admits that it took these actions pursuant to the City's Scofflaw program. (5J Response to MB 56.1 Stm. ¶ 22.) In other words, Five J's actions were taken under the authority given to Five J's by the City under its Scofflaw and the related program. These actions are therefore state actions, and Plaintiff may challenge them under § 1983. Five J's is not entitled to summary judgment on this ground.

### 2. Fourteenth Amendment Due Process

Next, I consider Plaintiff's due process claim, on which all parties move for summary judgment. "The Due Process Clause of the Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty or property, without due process of law.'" *City of Yonkers*, 2024 WL 4817649, at *8 (quoting U.S. Const. amend. XIV § 1). In evaluating a due process claim, a court must consider (1) whether the defendant deprived the plaintiff of "a liberty or property interest protected by the Due Process [C]lause; and, if so, [(2)] whether existing state

procedures are constitutionally adequate." *Ford Motor Credit Co. v. NYC Police Dep't*, 503 F.3d 186, 190 (2d Cir. 2007) (quoting *Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005)).

### a.   Plaintiff's Property Interest

Plaintiff, as a secured creditor, had "two rights:  the *contractual* right to repayment of the debt owed and the *property* right to the collateral that secures the debt in the event of non-payment." *Ford*, 503 F.3d at 191 (quoting *Armstrong v. United States*, 364 U.S. 40, 46 (1980)) (emphasis in original).  The Second Circuit has held that in these circumstances the Due Process Clause protects an auto-financing company's "property interest in the present value of a seized vehicle." *Id*.  Defendants deprived Plaintiff of its property right to the value of the Vehicle upon its seizure, because thereafter Plaintiff could not repossess it without submitting to Defendants' conditions, including the payment of various towing and storage fees.  *Cf. Santander Consumer USA, Inc. v. Cnty. of Nassau*, 623 F. Supp. 3d 6, 16–17 (E.D.N.Y. 2022) (explaining that seizure and subsequent retention of vehicle subject to a lien abridged the lienholder's property interests); *Santander Consumer USA, Inc. v. Cnty. of Suffolk*, No. 20-CV-2656, 2021 WL 4480574, at *6 (E.D.N.Y. Sept. 30, 2021) (same).  Courts have described the condition that a secured creditor pay for "towing and storage fees" to retrieve a seized vehicle as a "lien" that "encumber[s]" the creditor's interest in the vehicle.  *Cnty. of Nassau*, 623 F. Supp. 3d at 18.  Although the City disputes Plaintiff's characterization of the fees as a "*de facto* possessory lien," (*see* City Response to MB 56.1 Stm. ¶ 10), no party disputes that the City and Five J's would not permit Plaintiff to repossess the Vehicle without paying the fees, (*see id*. ¶¶ 20, 29; 5J Response to MB 56.1 Stm. ¶¶ 20, 29).  Regardless of whether the conditions on the release of the Vehicle are called a "lien" or something else, there is no question that the conditions deprived Plaintiff of its property interest in the Vehicle.  There is also no question that Plaintiff's actions did not result in

the towing and storage fees.  I note as well that the value of the Vehicle at the time of the seizure is greater than its value at the time of the auction, because a "vehicle depreciates over time." *City of Yonkers*, 2024 WL 4817649, at *8 (quoting *TD Auto Fin. LLC v. Cnty. of Putnam*, No. 21-CV-9080, 2023 WL 6295116, at *7 (S.D.N.Y. Sept. 27, 2023)); *cf. Ford*, 503 F.3d at 191 (noting that "the government must compensate mortgage holders for the depreciation in their security interest between the date the collateral became forfeitable and the date the government obtained a final judgment of forfeiture" (citation omitted)).

The City, citing *Prop. Clerk v. Molomo*, 613 N.E.2d 567, 567 (1993), argues that Plaintiff "does not have a 'present possessory right' to a seized vehicle," and that its interest is only in "the proceeds from the forfeiture sale" plus "any deficiency," which can be recouped from "the debtor." (City 1st Mem. 9–10.)  Five J's takes the same position. (5J 1st Mem. 13, 15–16.)  The Second Circuit rejected this precise argument in *Ford*, "disagree[ing]" with the City's argument "that [the lienholder's] only cognizable property interest is in a vehicle's sale proceeds." 503 F.3d at 190–91.[9]  By focusing on the "present possessory right," and in noting that "a lienholder's interest is 'not as great as the interest of the vehicle's owner in possession of a seized vehicle,'" (City 1st Mem. 9–10 (quoting *Ford*, 503 F.3d at 193)), the City misses the point of the *Ford* case, which is that the Due Process Clause protects a lienholder's "property interest" in a seized vehicle, 503 F.3d at 191.  The degree of protection that the Constitution requires of that right is a separate question. *See infra* § IV.A.2.b.

For these reasons, I find that Plaintiff has a property interest in the Vehicle protected by the Due Process Clause.

---

[9] Indeed, the City cited *Molomo* in *Ford* to support the very proposition it advocates here, and, as discussed, the Second Circuit explicitly rejected the City's argument. *See id.*

b.  The Process Plaintiff Was Due

Having concluded that Defendants deprived Plaintiff of a property interest, the next

question is the process that Plaintiff was due.  *See Ford*, 503 F.3d at 191.  The "general"

requirement is that "'individuals must receive notice and an opportunity to be heard before the

Government deprives them of property.'"  *TD Auto*, 2023 WL 6295116, at *7 (quoting *United*

*States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993)).  Due process, however, is a

"flexible" concept, and the Constitution "does not, in all cases, require a hearing before the state

interferes with a protected interest, so long as some form of hearing is provided before an

individual is finally deprived of the property interest."  *Cnty. of Nassau*, 623 F. Supp. 3d at 17

(quoting *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011)) (cleaned up).  To account for this,

courts apply a three-factor balancing test drawn from the Supreme Court's decision in *Mathews*

*v. Eldridge*, which:

> requires consideration of . . . [(1)] the private interest that will be affected by the
> official action; [(2)] the risk of an erroneous deprivation of such interest through
> the procedures used, and the probable value, if any, of additional or substitute
> procedural safeguards; and [(3)] the Government's interest, including the function
> involved and the fiscal and administrative burdens that the additional or substitute
> procedural requirement would entail.

424 U.S. 319, 335 (1976); *see Nnebe*, 644 F.3d at 158 ("*Mathews* is the test for both when a

hearing is required (*i.e.*, pre- or post-deprivation) and what kind of procedure is due." (quoting

*Brody v. Vill. of Port Chester*, 434 F.3d 121, 135 (2d Cir. 2005))).

The City provides the following process:  it sends a "standard notice to the lienholder"

that "the vehicle will be sold at public auction" and "to retrieve the vehicle, the lienholder must

first contact [the City finance department] to obtain the required release and, second, pay the

applicable fees."  (City 56.1 Stm. ¶ 23.)  It is undisputed that it is the City's "normal practice and

procedure not to hold a hearing relating to the seizure of a vehicle seized pursuant to" the

Scofflaw program.  (MB 56.1 Stm. ¶ 27; *see* City Response to MB 56.1 Stm. ¶ 27; 5J Response to MB 56.1 Stm. ¶ 27.)  It is also undisputed that the City did not hold a "hearing before a neutral decisionmaker relating to the propriety of the towing of the Vehicle" and its subsequent turnover, storage, and sale at auction.  (MB 56.1 Stm. ¶ 26; *see* City Response to MB 56.1 Stm. ¶ 26; 5J Response to MB 56.1 Stm. ¶ 26.)

Plaintiff argues that by failing to provide lienholders with the opportunity for any hearing at any time, the Scofflaw program is per se unconstitutional such that there is no need to apply the *Mathews* balancing test.  (MB 1st Mem. 11.)  I agree.  "The law is clear that some form of hearing is required—either pre- or post-seizure—before an individual or entity is finally deprived of a property interest, and that the absence of any hearing whatsoever necessarily will fail the *Mathews* balancing test."  *TD Auto*, 2023 WL 6295116, at *9 (citing *Mathews*, 424 U.S. at 333; *Propert v. Dist. of Columbia*, 948 F.2d 1327, 1332 (D.C. Cir. 1991); *HVT, Inc. v. Port Auth. of N.Y. & N.J.*, No. 15-CV-5867, 2018 WL 3134414, at *9 (E.D.N.Y. Feb. 15, 2018), *report and recommendation adopted*, 2018 WL 1409821 (E.D.N.Y. Mar. 21, 2018)).  Because the Scofflaw program does not provide Plaintiff the opportunity to challenge the conditions of the Vehicle's release with "some form of hearing," the program violates Plaintiff's rights under the Due Process Clause.  *Mathews*, 424 U.S. at 333.  Decisions considering similar Scofflaw programs in other jurisdictions within the Second Circuit have reached the same conclusion.  *See HVT, Inc.*, 2018 WL 3134414, at *9 (declining to apply the *Mathews* factors because it was "clear" that the Port Authority could not "summarily deprive Plaintiff of its property without any opportunity for a hearing"); *County of Nassau*, 623 F. Supp. 3d at 18–19 (concluding that consideration of the *Mathews* factors were unnecessary because the defendant "agree[d] that" its Scofflaw program did "not give a lienholder the opportunity to contest the conditions of release or the towing

company's assertion of a lien (citing *HVT*, 2018 WL 3134414, at *8)); *Toyota Lease Tr. v. Vill. of Freeport*, No. 20-CV-2207, 2023 WL 4443992, at *9–10 (E.D.N.Y. Jan. 24, 2023) (declining to apply *Mathews* because the defendant "did not provide opportunity for a hearing"), *report and recommendation adopted*, 2023 WL 4449333 (E.D.N.Y. Mar. 30, 2023); *TD Auto*, 2023 WL 6295116, at *11 (holding that the plaintiff "did not have any formal opportunity to be heard"); *City of Yonkers*, 2024 WL 4817649, at *10–11 (noting that the defendant's "policy provide[d] no opportunity for a hearing").

The City asserts two reasons why its failure to hold a hearing is not a per se denial of due process. *First*, it points out that the Supreme Court has stated that "[t]he opportunity for informal consultation with designated personnel empowered to correct a mistaken determination constitutes a due process hearing in appropriate circumstances." *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 16 n.17 (1978). Although the City accurately quotes the Supreme Court, as discussed, neither the City nor Five J's identify any opportunity Plaintiff had to challenge the seizure of the Vehicle or the imposition of conditions on its return. In other words, Defendants do not even provide an "opportunity for an informal consultation," *id*., so this citation only proves Plaintiff's point.[10] *Second*, the City argues that, as is mentioned in the seizure-notification documents that Plaintiff received, (Doc. 73-5), Plaintiff could have challenged the seizure in an "Article 52 proceeding," (1st City Mem. 13–14). *See* N.Y. C.P.L.R. § 5239 ("Prior to the application of property or debt by a sheriff or receiver to the satisfaction of a judgment, any interested person may commence a special proceeding against the judgment creditor or other person with whom a dispute exists to determine rights in the property or debt.")

---

[10] As Plaintiff points out in its letter dated May 24, 2024, the City admits that its purported informal process "do[es] not say anything about fees, let alone the ability to dispute fees or fee adjudications." (Doc. 96.)

This argument misses the point.  An Article 52 proceeding is a separate lawsuit that Plaintiff would have the burden to initiate, *see id*., and "a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation" to provide for a hearing before a neutral decisionmaker, *Ford*, 503 F.3d at 193 (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983)).

Although there is no need to apply the *Mathews* factors under the circumstances presented here, doing so confirms that the Scofflaw program violates Plaintiff's due process rights.  As to the first factor, Plaintiff's "private interest . . . in the present value of the Vehicle is 'considerable.'"  *City of Yonkers*, 2024 WL 4817649, at *11 (quoting *Ford*, 503 F.3d at 194); *accord TD Auto*, 2023 WL 6295116, at *11.  This factor favors Plaintiff, even though I recognize that, because Plaintiff does not use the vehicle "'as a mode of transportation or the means to earn a livelihood,'" its interest in the vehicle is "not as great as the interest of the vehicle's owner in possession."  *Ford*, 503 F.3d at 194 (quoting *Krimstock v. Kelly*, 306 F.3d 40, 61 (2d Cir. 2002), *abrogated on other grounds by Culley v. Marshall*, 601 U.S. 377, 386 (2024)).

The second *Mathews* factor considers "risk of an erroneous deprivation" of Plaintiff's interest "through the procedures" in place, "and the probable value, if any, of additional or substitute procedural safeguards" to that interest.  424 U.S. at 335.  One "obvious" risk of error in the Scofflaw procedures is that Defendants "towed and stored" the Vehicle "illegally," for instance because Chery had not accrued greater than $350 in traffic-ticket judgments.  *Cnty. of Nassau*, 623 F. Supp. 3d at 19.  Plaintiff's concern, however, is with the separate risk that it is erroneously deprived of its asserted right to repossess the Vehicle without paying Defendants' towing and storage fees.  (*See* MB 1st Mem. 13–14; *see also id*. at 14 (arguing that the Scofflaw program "violates New York law on a lienholder's repossession rights and the priority between"

19

the City and Mercedes' interests in the Vehicle)).  This risk of erroneous deprivation is also "high," because without a hearing, Plaintiff has "no opportunity to present any argument before a neutral arbitrator about whether [Defendants are] actually entitled to possess the Vehicle, assess" towing and storage "fee[s], or dispose of the Vehicle" in a public auction.  *TD Auto*, 2023 WL 6295116, at *11; *accord City of Yonkers*, 2024 WL 4817649, at *11.  The value of a hearing "is of particular importance here, where the Government has a direct pecuniary interest in the outcome of the proceeding" since it retains the outstanding traffic-ticket-judgment amount from the auction proceeds.  *James Daniel Good*, 510 U.S. 55–56.  This factor also weighs in Plaintiff's favor.

The third *Mathews* factor considers the City's interest in its current Scofflaw procedures and the "burden" it would face "if it were required to provide additional procedural safeguards." *TD Auto*, 2023 WL 6295116, at *11 (citation omitted).  I agree with Plaintiff that the City's general interest in enforcing traffic-ticket judgments through the Scofflaw program is irrelevant. (*See* MB 1st Mem. 13 n.2 ("Defendants' interest to be weighed here is *not* the general goal of parking ticket enforcement, but rather the 'specific interest' in using a lawfully seized vehicle as a hostage to coerce lienholders into complying with their demands.").)  The relevant question concerns the burden that Defendants would face if it had to provide Plaintiff's requested additional safeguard, which is "only one hearing before a neutral" decisionmaker.  (MB 2d Mem. 11).  *Cf. TD Auto*, 2023 WL 6295116, at *11 (explaining that the defendant's "legitimate interests in civil forfeiture and public safety writ large . . . do not justify," *inter alia*, "fully deny[ing] lienholders any opportunity to be heard with respect to the propriety of the seizure").

The City claims, without citation to evidence, that it has a "high" interest "in having a City employee make release determinations."  (City 1st Mem. 20.)  This unsupported statement

cannot sustain Defendants' (or withstand Plaintiff's) summary judgment motions.  *See* Fed. R. Civ. P. 56(c)(1).  Indeed, the City does not explain why it has a high interest in having a City employee make release determinations.  The City also argues that the "ongoing viability of the scofflaw program would be severely threatened" if "lienholders were deemed constitutionally exempt from paying basic fees associated with the City's tow program."  (City 1st Mem. 20; *see also* City 2d Mem. 9 ("[F]orcing the City and vendor to absorb towing and storage costs anytime a lienholder recovers a vehicle would be burdensome.").)  As an initial matter, neither the City nor the vendor is being forced to absorb the towing and storage cost—it takes those costs out of the auction proceeds, and would still have the ability to go after the registered owner for any deficiency.  (*See* Alverio Decl. ¶ 28.)  In any event, the City misunderstands "the Fourteenth Amendment guarantee that deprivations of property be accomplished only with due process of law."  *Krimstock*, 306 F.3d at 67.  Plaintiff does not, in connection with its due process claim, seek a determination that it need not pay Defendants' towing and storage fees.  It seeks only to require Defendants to provide an opportunity to challenge the seizure and resulting fees.  In other words, I am not being asked to make a determination concerning the propriety of the towing and storage fees.  Defendants have no answer to whether and how holding a hearing—which, as Plaintiff points out, may be accomplished through the City's existing Office of Administrative Trials and Hearings, (MB 2d Mem. 11 n.11)—would impose a burden.

Balancing the foregoing interests on the undisputed facts confirms as a matter of law that Defendants violated the Fourteenth Amendment's guarantee of due process by failing to provide an opportunity for Plaintiff to seek review of the Vehicle's seizure, detention, and auction.  *See, e.g., Cnty. of Nassau*, 623 F. Supp. 3d at 21 (concluding that plaintiff's due process rights were violated); *Toyota*, 2023 WL 4443992, at *10 (holding that plaintiff "has established a

constitutional deprivation by failing to provide timely notice and a hearing before a neutral decisionmaker to review the warrantless seizure"); *TD Auto*, 2023 WL 6295116, at *11 (holding that plaintiff "did not have any formal opportunity to be heard regarding its interest in the Vehicle"); *City of Yonkers*, 2024 WL 4817649, at *11 (same). Where, as here, "the existing [process] is found deficient[,] the district court then has considerable latitude to frame a decree with input from the parties and within the guidelines set by the court of appeals." *Nnebe*, 644 F.3d at 160. Thus, I order the parties to meet and confer concerning the structure of a review process and then to jointly submit a hearing proposal consistent with this Opinion & Order and applicable law. *See HVT, Inc.*, 2018 WL 3134414, at *11 (recommending similar briefing); *see infra* § V.

Plaintiff's motion for summary judgment on its Fourteenth Amendment claim is GRANTED, and Defendants' summary judgment motions on this claim are DENIED.

### 3. Fifth Amendment Takings Claim

The parties also seek summary judgment on Plaintiff's Fifth Amendment claim. "The Fifth Amendment provides that 'private property [shall not] be taken for public use, without just compensation.'" *City of Yonkers*, 2024 WL 4817649, at *11 (quoting U.S. Const. amend. V (alteration in original)). This provision "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). Thus, "[a] property owner" may bring what is called a "Fifth Amendment takings claim" under § 1983 "when the government takes his property without paying for it." *Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2017). Plaintiff's security interest in the Vehicle was a property interest to which the Fifth Amendment applies. *See City of Yonkers*, 2024 WL 4817649, at *12; *Ford*, 503 F.3d at 191

(explaining that "a valid Takings Clause claim lay where plaintiff's liens remain in effect but were unenforceable against the collateral following forfeiture" (citing *Armstrong*, 364 U.S. at 46)).  Plaintiff's theory of liability is that Defendants effected a taking on its right to repossess the Vehicle by impounding it between October 10, 2019 and December 13, 2019.  (*See* MB 1st Mem. 23.)

Thus, "[t]he next inquiry is whether there was a taking" within the meaning of the Fifth Amendment.  *City of Yonkers*, 2024 WL 4817649, at *12.  The law recognizes two types of takings:  (1) "physical takings," which occur "[w]hen the government physically takes possession of an interest in property for some public purpose," and (2) "regulatory takings," which involve "regulations that prohibit a property owner from making certain uses of her private property." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 321–22 (2002); *see also 74 Pinehurst LLC v. New York*, 59 F.4th 557, 563–64 (2d Cir. 2023) (applying the law relevant to physical and regulatory takings).

Different rules apply to physical and regulatory takings.  *See Tahoe-Sierra*, 535 U.S. at 321–24.  A physical taking always creates "a categorical duty" for the government "to compensate the former owner, regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof," and even if the government's use is "temporary." *Tahoe-Sierra*, 535 U.S. 322 (internal citations omitted).  By contrast, evaluating a regulatory taking requires "essentially ad hoc, factual inquiries," *id*. (quoting *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978)), into whether "a regulation goes 'too far' in restricting a landowner's ability to use his own property," *74 Pinehurst*, 59 F.4th at 564 (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)).

Plaintiff's claimed taking—the Vehicle's impoundment—is not easily categorizable as a regulatory or physical taking. *Cf. Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147–48 (2021) (concluding that a regulation caused a physical taking); *id*. at 166 (Breyer, J., dissenting) (observing that the regulation at issue "only awkwardly fit[] the terms 'physical taking' and 'physical appropriation'"). On the one hand, Defendants "physically [took] possession of" the Vehicle "without acquiring title to it," a situation the Supreme Court has classified as a physical taking. *Cedar Point Nursery*, 594 U.S. at 147–48 (citing *United States v. Pewee Coal Co.*, 341 U.S. 114, 115–117 (1951)). On the other hand, Plaintiff relies principally on a regulatory takings case, *Anderson v. United States*, 364 U.S. at 48, (*see* MB 1st Mem. 21–22), for the proposition that the government's destruction of the value of a lien is a compensable taking under the Fifth Amendment. *See Tahoe-Sierra*, 535 U.S. at 332 n.27 (equating *Armstrong* to *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992), another regulatory taking case, because both "involved the 'total destruction by the Government of all value' in a specific property interest" (quoting *Armstrong*, 364 U.S. at 48–49)). Recently, Judge Karas cited *Armstrong* in evaluating—as a regulatory taking—a claim based on a municipality's forfeiture of an automobile finance company's security interest. *See City of Yonkers*, 2024 WL 4817649, at *12. Further, in *Ford*, the Second Circuit cited *Armstrong* in concluding that the plaintiff automobile finance company had a property right "in the collateral itself—the seized vehicle." *Ford*, 503 F.3d at 191.

However, I find that Plaintiff's Fifth Amendment claim fails whether analyzed under either framework. I begin with analyzing Defendants' conduct as a regulatory taking. Evaluating purported temporary regulatory takings such as the Vehicle's impoundment "requires careful examination and weighing of all the relevant circumstances," *Tahoe-Sierra*, 535 U.S. at 335 (internal quotation marks omitted), which include the "economic impact" of the purported

taking, "the extent to which the regulation has interfered with distinct investment-backed expectations," and "the character of the governmental action," *74 Pinehurst*, 59 F.4th at 566 (quoting *Penn Central*, 438 U.S. at 124).

The economic impact of the impoundment here weighs against Plaintiff. The duration of the impoundment was, in Plaintiff's words, "short," (MB 1st Mem. 23); Plaintiff does not claim that, as in *Ford*, a "considerable time" elapsed between seizure and auction entitling it to substantial depreciation damages, 503 F.3d at 189, 192. Plaintiff does not and cannot claim that, as in *City of Yonkers*, that Defendants "destroy[ed]" its entire "property interest in the vehicle." 2024 WL 4817649, at *12 (citing *Armstrong*, 364 U.S. at 48). In that case, the defendant municipality "obtained title to the Vehicle and subsequently sold it," presumably keeping the proceeds for itself. *Id*; *see also Armstrong*, 364 U.S. at 48 (explaining that "the Government for its own advantage destroyed the value of the [plaintiff's] liens, something that the Government could do because its property was not subject to suit, but which no private purchaser could have done"). Here, by contrast, Plaintiff admits that the Vehicle was auctioned "subject to [Plaintiff]'s recorded lien," and that "all remaining auction proceeds" less the outstanding judgments and fees, "were relinquished to the owner of [the Vehicle], Chery." (MB Response to City 56.1 Stm. ¶¶ 48, 51.)

Plaintiff's expectation interest in the Vehicle and the Scofflaw program also weighs against concluding the impoundment was a regulatory taking. *See 74 Pinehurst*, 59 F.4th at 566. Indeed, Plaintiff's installment contract with Chery contemplated the possibility of the government's seizure of the Vehicle; it is that language in the contract that entitled Plaintiff to repossess the Vehicle in the first instance. (MB 56.1 Stm. ¶¶ 10–11.) Thus, Plaintiff cannot claim that it entered into the installment contract "in reliance on a state of affairs that did not

include" the potential that the Vehicle might be seized and temporarily detained. *74 Pinehurst*, 59 F.4th at 567 (citation omitted).

Finally, "the character of the governmental action" does not favor Plaintiff. *Id*. at 566 (quoting *Penn Central*, 438 U.S. at 124). It is true that government action which "can be characterized as a physical invasion," as here, often points towards a taking. *Id*. at 568 (quoting *Penn Central*, 438 U.S. at 124). However, the Vehicle is not Plaintiff's personal property, and Plaintiff's right to possess it derives from Chery's default on the installment contract. Moreover, the Scofflaw program "serve[s] 'important public interests'" of parking and traffic enforcement. *Id*. (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 485–86 (1987)). This factor—while more favorable to Plaintiff than the others—does not carry the day. The balance of the regulatory taking factors weighs against Plaintiff.

Considering Plaintiff's claim as one for a physical taking[11] leads me to reject it for a different reason. The Supreme Court recently observed that "traditional common law privileges to access private property" are "background limitations" to physical-takings claims. *Cedar Point*, 594 U.S. at 160. In other words, traditionally sanctioned Government intrusions into private property interests are not physical takings. *See id*. at 160–61. "For example, the government owes a landowner no compensation for requiring him to abate a nuisance on his property, because he never had a right to engage in the nuisance in the first place." *Id*. at 160 (citation omitted). Here, Defendants' seizure of the Vehicle was consistent with New York law, *see* N.Y.C. Admin. Code. § 19-212, and as I discuss *infra* § IV.A.4, consistent with the Fourth

---

[11] Here, Plaintiff's claim is that Defendants effectuated a taking during the duration of the Vehicle's impoundment. This is similar to the government's "temporary occupancy of a portion of a leased building," which the Supreme Court has explained is a physical taking entitling the owner to any "consequential damage[s]" that might be proven, including opportunity costs and depreciation. *United States v. Gen. Motors Corp.*, 323 U.S. 373, 375, 381–84 (1945).

Amendment. Thus, it did not invade a traditional property right such that it caused a physical taking. *Cf. Cedar Point*, 594 U.S. at 161 ("Because a property owner traditionally had no right to exclude an official engaged in a reasonable search, government searches that are consistent with the Fourth Amendment and state law cannot be said to take any property right from landowners." (internal citation omitted)).

In sum, I conclude that Defendants did not, as a matter of law, commit a Fifth Amendment taking. Thus, Plaintiff's motion for summary judgment on this claim is DENIED, and Defendants' motions on this claim are GRANTED.

### 4. Fourth Amendment Unreasonable Seizure

Next, I address whether any party is entitled to summary judgment on Plaintiff's Fourth Amendment claim. "The Fourth Amendment protects individuals against 'unreasonable searches and seizures.'" *City of Yonkers*, 2024 WL 4817649, at *6 (quoting U.S. Const. amend. IV). By booting and towing the Vehicle, Defendants "seized" it within the meaning of the Fourth Amendment because there was "'some meaningful interference with an individual's possessory interest in that property.'" *See Harrell v. City of New York*, 138 F. Supp. 3d 479, 488 (S.D.N.Y. 2015) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). It is unclear, however, whether the Fourth Amendment protected Plaintiff's interest, as opposed to Chery's interest, in the Vehicle at the time that it was seized. As discussed, Chery defaulted on her contract with Plaintiff at the time of the seizure; thereafter, the contract entitled Plaintiff to repossess the Vehicle. (*See* MB 56.1 Stm. ¶¶ 10–11.) Courts have concluded that the Fourth Amendment does not necessarily protect a lienholder's rights at the time of a seizure even when, as here, the seizure is a default under an installment contract entitling the lienholder to repossession. *See Cnty. of Nassau*, 623 F. Supp. 3d at 15–16; *Cnty. of Suffolk*, 2021 WL 4480574, at *6.

Even assuming Plaintiff had Fourth Amendment interests in the Vehicle, the seizure did not violate them. The "ultimate" question of whether the Fourth Amendment permits a seizure is whether the seizure was reasonable; this inquiry involves "careful balancing of governmental and private interests" at stake. *Harrell*, 138 F. Supp. 3d at 488 (quoting *Soldal v. Cook Cnty.*, 506 U.S. 56, 71 (1992)). The "towing and impoundment of vehicles" based on valid parking- and traffic-ticket judgments and authorized under New York City Administrative Code § 19-212 and New York Vehicular & Traffic Law § 237(5) is "reasonable under the Fourth Amendment." *Tsinberg v. City of New York*, No. 20-CV-749, 2021 WL 1146942, at *10 (S.D.N.Y. Mar. 25, 2021) (citing *Shibeshi v. City of New York*, No. 11-CV-4449, 2011 WL 13176091, at *2 (S.D.N.Y. Sept. 21, 2011); *Yu Juan Sheng v. City of New York*, No. 05-CV-1118, 2009 WL 6871132, at *8 (E.D.N.Y. June 26, 2009), *report and recommendation adopted*, 2010 WL 3744428 (E.D.N.Y. Sept. 20, 2010); *Rackley v. City of New York*, 186 F. Supp. 2d 466, 478–79 (S.D.N.Y. 2002)). This makes sense because seizures solely to enforce civil judgments "do[] not implicate core privacy concerns requiring a warrant," *id*. (quoting *Shibeshi*, 2011 WL 13176091, at *2), especially since the Vehicle is not Plaintiff's "personal property," *Harrell*, 138 F. Supp. 3d at 488 (quoting *Illinois v. McArthur*, 531 U.S. 326, 330 (2001)) (cleaned up). Because the initial seizure was reasonable, there is no separate Fourth Amendment claim for its continued retention. *Bennett v. Dutchess Cnty.*, 832 F. App'x 58, 60 (2d Cir. 2020) (summary order) ("'[A] seizure claim based solely on the unlawful retention' of property that was lawfully seized has been recognized as 'too novel a theory to warrant Fourth Amendment protection.'" (quoting *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004))); *see also Vasquez v. Warren*, 630 F. Supp. 3d 524, 543 (S.D.N.Y. 2022) ("To the extent the Constitution affords any right with respect to a government agency's retention of lawfully seized property, it would

appear to be procedural due process." (quoting *Ahlers v. Rabinowitz*, 684 F.3d 53, 62 (2d Cir. 2012))); *City of Yonkers*, 2024 WL 4817649, at *7.

Plaintiff's Fourth Amendment claim fails.  Therefore, as to this claim, Plaintiff's summary judgment motion is DENIED, the City's summary judgment motion is GRANTED, and Five J's summary judgment motion is GRANTED.

### 5.  Conversion

Finally, I address Five J's motion for summary judgment against Plaintiff's conversion claim.  "According to New York law, 'conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 660 N.E.2d 1121, 1126 (N.Y. 1995)) (cleaned up).  Five J's argues it is entitled to summary judgment for three reasons, none of which carry Five J's' burden under Rule 56.  (*See* 5J 1st Mem. 18.)

First, Five J's argues that as a matter of law its possession of the Vehicle was authorized because the City seized it pursuant to State and City law.  *See* N.Y. Veh. & Traf. L. § 237(5); N.Y.C. Admin. Code. § 19-212.  This is not dispositive, because even when a defendant's "original possession is lawful," a plaintiff may maintain a conversion claim if the defendant "refuses to return the property after demand."  *Ancile Inv. Co. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 312 (S.D.N.Y. 2011) (internal quotation marks omitted).  Five J's does not dispute that it conditioned the return of the Vehicle on Plaintiff paying the towing and storage fees.  (5J 56.1 Stm. ¶¶ 18–20.)  These conditions constitute a demand refusal under New York law.  *See Grosz v. Museum of Mod. Art*, 772 F. Supp. 2d 473, 483–84 (S.D.N.Y. 2010) (citing *Feld v. Feld*, 720 N.Y.S.2d 35, 37 (N.Y. App. Div. 1st Dep't 2001)).  Therefore, Five J's related

argument that impounding "the Vehicle did not interfere with [Plaintiff's] rights in" the Vehicle is similarly without merit.  (5J 1st Mem. 18.)  Just as an innocent purchase of stolen property does not extinguish a lawful owner's conversion claim, a lawful seizure does not extinguish a conversion claim against parties with inferior rights—in both instances, a conversion claim accrues when the defendant refuses a demand to return the property.  *Cf. Grosz*, 772 F. Supp. 2d at 483–88 (discussing an innocent purchaser's demand refusal).

Additionally, Five J's argues that "the Vehicle was not [Plaintiff's] personal property," (5J 1st Mem. 18), *i.e.*, that Plaintiff lacks any superior right as a matter of law.  This is also wrong. "Invasion of a right to possession retained as a security interest may establish a conversion actionable under New York law."  *Atlanta Shipping Corp. v. Chem. Bank*, 818 F.2d 240, 249–50 (2d Cir. 1987) (citing *R.L. Rothstein Corp. v. Kerr Steamship Co.*, 251 N.Y.S.2d 81, 84 (N.Y. App. Div. 1st Dep't 1964), *aff'd*, 206 N.E.2d 360 (1965)).  "On default of payment, under the New York Uniform Commercial Code, a secured party has the right to take possession of its collateral."  *Barrett v. Harwood*, 189 F.3d 297, 300 (2d Cir. 1999); *see also* N.Y. U.C.C. § 9-609(a)(1) ("After default, a secured party may take possession of the collateral.").  Five J's does not dispute that Chery defaulted on her installment contract with Plaintiff by permitting the seizure of the Vehicle, (5J Response to MB 56.1 Stm. ¶ 10); under New York law, Plaintiff therefore had a "right to possession" of the Vehicle on which to base its conversion claim. *Atlanta Shipping*, 818 F.2d at 249.  Five J's also argues that New York Lien Law § 184(5) entitled it to assert a lien on the Vehicle for the towing and storage fees, so its lien was superior to Plaintiff's lien.  (*See* 5J 1st Mem. 11–12.)  Five J's is correct that this statute permits towing companies to assert liens for towing and storage that—when certain conditions are met—have priority over the liens of secured creditors.  *See, e.g.*, *Ally Fin., Inc. v. All Cnty. Towing &*

*Recovery*, 166 A.D.3d 1442, 1444, 89 N.Y.S.3d 370, 372 (N.Y. App. Div. 3d Dep't 2018).

However, Five J's does not identify any record evidence demonstrating that it even sent the

notice required by § 184(5) to assert a lien,[12] or that the notice Plaintiff received from the City

complied with the requirements of the Lien Law,[13] "which must be strictly construed." *Nissan*

*Mot. Acceptance Corp. v. All Cnty. Towing*, 161 A.D.3d 1423, 1425, 77 N.Y.S.3d 219, 220 (N.Y.

App. Div. 3d Dep't 2018) (collecting cases); *see also Am. Honda Fin. Corp. v. One 2008 Honda*

*Pilot*, 24 Misc. 3d 745, 749, 878 N.Y.S.2d 597, 600 (N.Y. Sup. Ct. 2009) (explaining that the

defendant's "failure to give [the secured creditor] notice" of its towing lien was "fatal" to the

asserted lien). Five J's has not carried its burden under Rule 56(a) to show "there is no genuine

dispute" that Plaintiff's rights in the Vehicle were inferior to Five J's'.

Five J's fails to meet its burden of showing that it is entitled to summary judgment on

Plaintiff's conversion claim. Therefore, Five J's motion for summary judgment on Plaintiff's

conversion claim is DENIED.

### B. *Remedies*

As Plaintiff is entitled to summary judgment on its § 1983 due process claim, I next

consider: (1) Plaintiff's arguments that it is entitled to damages and (2) declaratory relief; and

(3) the City's argument that it is entitled to summary judgment on Five J's claim for common-

law indemnification.

---

[12] *See* N.Y. Lien L. § 184(5) ("A person . . . who seeks to assert a lien . . . shall mail . . . a notice . . . to every person who has a perfected security interest in such motor vehicle.").

[13] For instance, the notice that Plaintiff received from the City explained that Plaintiff would have to pay towing and storage costs to retrieve the Vehicle, but not that Five J's would assert a lien on the Vehicle under § 184. (Azubogu Decl. 13.)

### 1. Damages

Plaintiff argues that the appropriate measure of compensatory damages for "the combination of the three constitutional violations at issue here" is $14,000, which is the amount that the Vehicle sold for at auction. (MB 1st Mem. 25–26.) Plaintiff, however, is not entitled to summary judgment on its Fourth or Fifth Amendment claims, and does not submit a measure of damages corresponding to the Fourteenth Amendment claim on its own. (*See id*.) Since the parties have not briefed the appropriate compensatory damages for Plaintiff's Fourteenth Amendment claim, I will DENY summary judgment on the issue of compensatory damages. Plaintiff may seek compensatory damages by separate motion. "Of course, Counsel should confer to determine if they can agree as to these compensatory damages." *HVT*, 2018 WL 3134414, at *15.

Plaintiff also seeks nominal damages, which Defendants do not oppose. "Because the right to procedural due process is absolute, and because of the importance to organized society that procedural due process be observed," the Supreme Court has explained that "the denial of procedural due process should be actionable for nominal damages." *HVT*, 2018 WL 3134414, at *15 (quoting *Carey v. Piphus*, 435 U.S. 247, 266 (1978)) (cleaned up). Plaintiff is awarded nominal damages of $1 in connection with its Fourteenth Amendment claim. *Accord id*.

### 2. Declaratory Relief

Plaintiff also seeks a declaratory judgment[14] that Defendants' Scofflaw program is unconstitutional. (*See* MB 1st Mem. 26–27.) The Declaratory Judgment Act empowers federal courts to issue declaratory judgments. *See* 28 U.S.C. § 2201(a) (explaining that "any [federal]

---

[14] Plaintiff is incorrect to seek a declaratory judgment "as a standalone claim," because in federal court, such relief "is procedural only and does not create an independent cause of action." *TD Auto*, 2023 WL 6295116, at *13 (quoting *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012)) (cleaned up).

court . . . may declare the rights and other legal regulations of any interested party" that seeks a declaratory judgment). A court "may" exercise its discretion to issue a declaratory judgment, *id.*, considering "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005) (citation omitted).

Because the Fourteenth Amendment requires Defendants to provide Plaintiff the opportunity for a hearing as part of the Scofflaw program, a declaratory judgment would "clarify[] or settl[e] the legal issues involved." *Id.* Specifically, as discussed *supra* IV.A.2.b., a declaratory judgment would memorialize the process that Plaintiff is due. Courts in similar circumstances have reached the same conclusion. *See City of Yonkers*, 2024 WL 4817649, at *14 (citing, *inter alia, TD Auto*, 2023 WL 6295116, at *14; *Toyota Lease Tr.*, 2023 WL 4443992, at *12) (finding declaratory relief to be appropriate). Thus, I will grant declaratory relief as to the Fourteenth Amendment claim following the parties' submission of additional briefing on this topic.

### 3. Indemnification

The City seeks summary judgment on Five J's crossclaim for common law indemnification. I need not, however, consider the merits of this claim. Under New York law, an indemnification claim "do[es] not accrue . . . until the party seeking indemnification has made payment to the injured person." *McDermott v. City of New York*, 406 N.E.2d 460, 461 (N.Y. 1980); *see also Lehman XS Tr., Series 2006-GP2 by U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*, 916 F.3d 116, 125–26 (2d Cir. 2019). "[I]f a plaintiff brings a claim that has not accrued, the court must dismiss it without prejudice." *Mulgrew v. United States Dep't of Transp.*,

No. 23-CV-10365, 2024 WL 3251732, at *17 (S.D.N.Y. June 20, 2024) (collecting cases). Thus, I will DISMISS this claim without prejudice.

## V.    **Conclusion**

For the foregoing reasons, the motions of the parties for summary judgment are GRANTED IN PART and DENIED in PART consistent with this Opinion & Order. Specifically: Plaintiff's motion for summary judgment is GRANTED as to Plaintiff's due process claim and is DENIED as to Plaintiff's Fourth Amendment claim, Fifth Amendment claim, and claims under the New York State Constitution. The City's motion for summary judgment is GRANTED as to Plaintiff's Fourth Amendment and Fifth Amendment claims and as to Five J's indemnification claim, and is DENIED as to Plaintiff's due process claim and claims under the New York State constitution. Five J's motion for summary judgment is GRANTED as to Plaintiff's Fourth Amendment and Fifth Amendment claims and is DENIED as to Plaintiff's due process claim, its claims under the New York State Constitution, and its conversion claim.

IT IS HEREBY ORDERED that the parties meet and confer, and no later than April 10, 2025, submit a joint letter addressing: (1) the appropriate amount of compensatory damages, if any, *see supra* § IV.B.1, and (2) the process Plaintiff is due so that the Scofflaw program is consistent with the Fourteenth Amendment, *see supra* §§ IV.A.2.b, IV.B.2.

The Clerk of Court is respectfully directed to terminate the pending motions at Docs. 65, 72, 77, and 96.

SO ORDERED.

Dated: March 11, 2025
       New York, New York

_Vernon Broderick_
Vernon S. Broderick
United States District Judge